# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS J. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 1000 |
| ) | |
| SIEMENS BUSINESS SERVICES, ) | |
| LLC, BRUCE YORK, DAVID ) | |
| FRAZIER, and DONALD OLNEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Thomas Carter has sued Siemens Business Services, LLC, Donald Olney, Bruce York and David Frazier[1] for discrimination under the Uniformed Services Employment and Reemployment Act (USERRA), 38 U.S.C. § 4301(a)(3). Olney, York and Frazier have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and have also moved for summary judgment. For the reasons set forth below, the Court grants the motion to dismiss only as to defendant Olney and denies the motion for summary judgment.

## Facts

The Court takes the following facts from the allegations in Carter's complaint and parties' affidavits submitted for purposes of defendants' Rule 12(b)(2) motion. Any additional facts that are relevant to the defendants' motion for summary judgment are

---

[1] Carter has voluntarily dismissed his claims against Debra Barrett.

discussed in the section of this decision concerning that motion.

Carter held the rank of captain when he retired from the United States Army in 1996. In February 2005, Siemens hired Carter as a project management engineer in its problem management group. Carter worked in Lake Zurich, Illinois but reported to Siemens' main facility located in Mason, Ohio. He was the only member of the problem management group based in Illinois.

Olney, a resident of Ohio, was a problem management engineer at Siemens' facility in Mason, Ohio. In November 2005, while still based in Ohio, Olney became acting manager of the front office support group on a temporary basis. As acting manager, Olney became Carter's supervisor. In his temporary role, he never traveled to Illinois. Olney last visited Illinois while on a Siemens business trip in September 2005. Siemens paid his expenses. Olney had no contact with Carter on this business trip.

York is currently a resident of Tennessee and works for Siemens as a human resources consultant. He advises managers regarding whether, in a given situation, employee discipline or termination is proper under the company's employment policies and procedures. York has been to Illinois once, in June 2004, while on a Siemens business trip. Because Carter had not yet been hired, York had no contact with him on that trip.

Frazier resides in Ohio and works at Siemens' office in Mason, Ohio. Frazier began working for Siemens as senior manager for service delivery. In January 2006, he was promoted to director of the competency center. He made one business trip to Siemens' Chicago facility in 2005, to attend a mandatory staff meeting. The meeting

lasted less than a full day and did not concern Carter. The parties do not explain Frazier's role as director, but Carter claims that Frazier manages his department and had supervisory authority over him and Olney.

Carter alleges that on February 8, 2006, he submitted to Frazier an internal complaint alleging that Olney had harassed him. That same afternoon, Frazier and Carter spoke by phone. Frazier stated that he would take Olney with him to Chicago on February 14 so that they could meet with Carter and discuss their differences. Carter also alleges that he spoke with Barrett on the morning of February 8. Carter alleges that he mentioned to her that he and Frazier were scheduled to discuss Olney's harassment that afternoon.

Carter attached to his complaint an e-mail thread that includes an e-mail Barrett drafted and sent to herself on February 9, 2006 at 3:57 a.m. She states in the e-mail that on the morning of February 8, she and Carter were discussing work-related matters when he "started to rant about how upset he was at the 'one that need not be mentioned' and that he needs to talk to [Frazier] right away." Compl., Ex. A. Barrett's e-mail states that she listened to Carter and could not recall whether she said anything to him. She also stated that "[t]hen he said 'I'm so mad if I was down there, I'd assemble my blahblah troop and kill him.' He used a military term where there is blahblah." *Id.* Barrett stated in the e-mail that she typed the note because she "[w]oke up [at] 3am on 02/09/2005 and realized that [Carter] made a threat to kill [Olney]." *Id.* The same e-mail thread includes a message from Barrett to York dated February 10, 2006, sent at 1:22 p.m. It states that "per [York's] request this was sent to myself . . . and was read to David Frazier on February 9, 2006 at 8:00 a.m." *Id.*

3

On February 10, 2006 at 2:26 p.m., York sent an e-mail to Siemens attorney Philip Paseltiner marked "urgent," stating that Carter had made a threat against Olney. The e-mail explained that "[i]n a telecom . . . Carter (located in Chicago) voiced a threat to kill his manager (Don Olney) who is located in Mason, OH, to a co-worker, Debra Barrett." Compl., Ex. B. York included Barrett's e-mail thread in the message. York stated that Barrett initially "just passed this off" but then "realized that [Carter] had made a life-threatening comment and today shared the matter with [Olney] and their manager [Frazier]." *Id.* York also indicated that "[Carter] has a former military background perceived to be in the type of unit that was involved in killing." *Id.*

York explained to counsel other problems Siemens allegedly had with Carter. Carter's previous manager, Marshall Sizemore, had given Carter a verbal warning regarding complaints from female employees about the way he approaches women. Sizemore also addressed a customer complaint concerning an e-mail from Carter and had Carter send communications to him for screening. York also alleged that Carter had refused to recognize Olney as manager by going around him and not copying him on communications. York noted that he "take[s] this type of threat seriously" and that Carter "has some history." He concluded his message by recommending Carter's termination.

Carter states that on and after February 8, he reported to work at Siemens' Lake Zurich facility. On Monday, February 13, the local supervisor instructed him to go to a conference room to participate in a call with York. Carter alleges that York began the call by asking who he was going to kill. Carter replied, "nobody," and he asked York what he was talking about. York informed him that a co-worker had stated that Carter

4

was going to kill someone and that the company was terminating him because of that statement.

Carter alleges that Siemens never investigated Barrett's statement and never reported it to law enforcement. He contends that Siemens terminated him because he had been in active military service, in a unit perceived to be "involved in killing." After terminating Carter, Siemens reported the alleged threat to the Sheriff of Lake County, Illinois, which concluded that the complaint was unfounded.

## Discussion

### A.  Personal jurisdiction

This Court begins by considering the individual defendants' motion to dismiss for lack of personal jurisdiction. A plaintiff is not required to allege in his complaint facts establishing personal jurisdiction. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). A plaintiff bears the burden of establishing personal jurisdiction over the defendants, however, if they move to dismiss for lack of personal jurisdiction. *Id.* "[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (internal quotation marks and citation omitted). Because the defendants in this case have submitted affidavits in support of their Rule 12(b)(2) motion, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. Courts resolve factual disputes in the record and conflicting affidavits in the plaintiff's favor. *Id.*

5

at 782-83.

Because USERRA does not provide for nationwide service of process, this Court may exercise personal jurisdiction over the individual defendants only if an Illinois court could do so through the state's long-arm statute. Fed. R. Civ. P. 4(k)(1)(A); see *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997) ("[Rule 4(k)(1)(A)] requires a district judge to determine whether the state in which the district court is located is authorized to exercise personal jurisdiction – even . . . in a federal-question case[,] . . . unless a federal statute authorizes nationwide service."); see also *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.,* 626 F. Supp. 2d 837, 844 (N.D. Ill. 2009). Personal jurisdiction exists in Illinois on any basis permitted by the Illinois and United States Constitutions. 735 ILCS 5/2-209(c).

The Illinois Supreme Court has held that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990). In *Rollins*, the Illinois Supreme Court cautioned that "Illinois' long-arm statute . . . may well restrict the power that the courts of this State have to bring nonresidents before them to a greater extent than do the Federal due process clause and the 'minimum contacts' standard developed over the years by the Supreme Court." *Id.* at 271-72, 565 N.E.2d at 1315. The Seventh Circuit has concluded post-*Rollins*, however, that there is no "operative difference" between federal and state due process requirements. *Kinslow v. Pullara,* 538 F.3d 687, 691 (7th Cir.

6

2008). "[This Court] . . . may [, therefore, begin by] collaps[ing] the personal jurisdiction analysis under Illinois law into the [federal] constitutional inquiry." *Id.* It will then consider limitations on personal jurisdiction that Illinois due process requires.[2]

Federal due process permits a state to exercise personal jurisdiction over non-residents only if the defendant has had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Exercise of personal jurisdiction is premised on the fact that the defendant "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum, thus invoking the benefits and protections of [the forum's] laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). A defendant who purposefully avails himself of the state to conduct business should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis omitted).

There are two types of personal jurisdiction, general and specific. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). A court has general

---

[2] Defendants assert the "fiduciary shield" doctrine in opposition to the claim of personal jurisdiction. This is a state law doctrine, not a federal doctrine. *See ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("The fiduciary-shield doctrine [is] a creation of state law regulating the limits of process in their own courts. . . . Federal courts could create the doctrine as a matter of federal common law, but it would be unsound to do this.").

jurisdiction when the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Specific jurisdiction exists when the cause of action arises "out of or related to the defendant's contacts with the forum." *Id.* at 414 n. 8. Carter does not contend that the individual defendants have systemic contacts amounting to general jurisdiction. Rather, he argues only that the Court has specific jurisdiction over the defendants.

### 1. Specific jurisdiction

To determine whether specific jurisdiction exists, this Court follows three steps:

> (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

*GCUI Employment Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009) (internal quotation marks and citation omitted).

Olney states that from November 2005 through February 2006, Siemens temporarily appointed him acting manager of his group. The parties also agree that as acting manager, Olney became Carter's supervisor. Carter alleges that although Olney lives in Ohio, he should have expected to be haled into court in Illinois because he is Carter's supervisor, and Carter lives in Illinois. Although Olney had contact with Illinois as acting manager, specific jurisdiction requires the conduct to "arise out of or . . . relate[ ] to the cause[ ] of action involved in the suit." *Id.*

Carter claims that Olney participated in the management's decision to terminate

him for discriminatory reasons. The complaint, however, does not include any allegation that Olney performed any acts that resulted in Carter's termination. Rather, Carter argues, it is reasonable to assume that Olney, as acting manager, participated in the company's decision to terminate him. Olney contends that, as acting manager, he did not have the authority to hire or fire employees. Carter contends that Olney's scope of authority did not differ from that of his former manager. The complaint, however, does not allege facts supporting Carter's contention that Olney participated, directly or indirectly, in his termination.

Attached to the complaint is an e-mail dated February 10, 2006, from York to other officials at Siemens. The e-mail states that "[Olney] is concerned that [Carter] might actually carryout the threat." Compl., Ex. B. In the same message, York states that Olney also reported that since he "has been acting as in interim manager, . . . [Carter] has refused to recognize him, goes around him, and fails to copy him on communications." *Id.* No other facts, however, suggest that Olney investigated the claim or contributed to Siemens' decision to terminate Carter. The contacts Olney generally had with Carter as acting manager are not specific to his claim and, therefore, are insufficient to establish specific jurisdiction.[3]

York and Frazier argue that their contacts in Illinois are unrelated to Carter's claim. The parties agree that York is a Siemens human resources consultant and that Frazier is director of Siemens' competency center. Carter's complaint includes an e-

---

[3] If during discovery plaintiff obtains information reflecting that Olney was involved in the termination decision, plaintiff can seek to amend the complaint, if appropriate, to add Olney back into the case as a defendant.

mail from Barrett to York, which explains that she read the e-mail she sent to herself to Frazier on February 9, 2006. The complaint also includes an e-mail from York dated February 10, 2006, explaining to Siemens' counsel his investigation of the incident and recommending terminating Carter's employment. In the same e-mail, York mentioned that "[Carter] has a former military background perceived to be in the type of unit that was involved in killing." Compl., Ex. B. Defendants concede that both York and Frazier participated in the February 13 call with Carter concerning the threat to kill Olney that he allegedly communicated to Barrett. Carter contends that he was terminated on the February 13 call because of his military background. York and Frazier's contacts with Illinois, therefore, were specifically related to Carter's claim in this case. Moreover, York and Frazier "purposefully directed" the alleged acts that resulted in Carter's termination at a "resident[ ] of the forum." *Burger King Corp.,* 471 U.S. at 472.

York and Frazier also contend that they are not subject to personal jurisdiction because they never physically entered Illinois. Although they were in other states when they committed the acts constituting the alleged discrimination, Carter suffered the consequences in Illinois. "[T]he state in which the injury . . . occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders." *Janmark, Inc.*, 132 F.3d at 1202; *see also Burger King Corp.,* 471 U.S. at 476 ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original). In this case, "an absence of physical contacts [does not] defeat personal jurisdiction," because York and Frazier's alleged discrimination was "purposefully directed" toward Carter, an Illinois resident. *Burger King Corp.,* 471 U.S. at 476.

This Court must also consider whether subjecting defendants to jurisdiction in Illinois comports with fairness and justice. The factors courts consider include "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. [Courts] must also weigh the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102 (1987) (internal quotation marks and citation omitted).

If Carter's allegations are proved true, then he has an interest in obtaining relief in his home forum. USERRA is federal legislation that prohibits employers from discriminating against an employee because of his current or prior military service. Illinois has an interest in ensuring that Siemens' management and consultants at other locations do not discriminate against the company's Illinois employees. These interests justify subjecting York and Frazier to the Court's specific jurisdiction. *See Asahi Metal Indus. Co.,* 480 U.S. at 114 ("When minimum contacts have been established, . . . the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

**2.     Fiduciary shield doctrine**

The defendants contend that even if their contacts are sufficient to establish personal jurisdiction, they are protected from being sued in Illinois by the so-called fiduciary shield doctrine. The Court considers this defense because its jurisdiction is based on Illinois' long-arm statute. *See C.S.B. Commodities, Inc.,* 626 F. Supp. 2d at

847 ("Courts in this district consistently have applied the fiduciary shield doctrine in federal question cases, although it appears to be the only instance in which Illinois and federal due process may not be co-extensive.").

Under the fiduciary shield doctrine, a person's contacts with the forum state on behalf of an employer or other principal are, as a general rule, insufficient to establish jurisdiction over the individual for a claim filed against him personally. *See Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994). The doctrine is discretionary or equitable, and not absolute. *Id.* at 914. The rationale for the doctrine is that it would be "unfair and unreasonable . . . to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins,* 141 Ill. 2d at 280, 564 N.E.2d at 1318.

"In evaluating whether it is equitable to apply the doctrine in the circumstances of a particular case, courts consider whether (I) the individual's personal interests motivated his actions and presence and (ii) the individual's actions are discretionary." *C.B.S. Commodities, Inc.,* 626 F. Supp. 2d. at 847; *see also Femal v. Square D Co.*, 388 Ill. App. 3d 134, 140, 903 N.E.2d 32, 38 (2009) ("[P]ersonal gain, discretionary actions, and ownership of most of the corporation's stock, all bear on the issue of whether a defendant's conduct in Illinois was a product of, and was motivated by, his employment situation."). In weighing these factors, courts "must also consider, based on equitable principles, whether the factual scenario in its entirety warrants application of the shield against personal jurisdiction." *Minemyer v. R-BOC Representatives, Inc.,*

12

No. 07-1763, 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007); *see also Rollins*, 141 Ill. 2d at 275, 565 N.E.2d at 1316 (finding that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois.").

Carter does not allege that York and Frazier were motivated by personal interests. The Court must consider, however, whether York and Frazier's actions were discretionary. *See Minemyer,* 2007 WL 2461666, at *6 (while discretion is "not alone a dispositive factor, . . . it is . . . one that [courts] must consider."). "[W]hen considering Defendant's level of discretion, this Court does not consider those actions that caused the employer to enter the forum state, but rather the actions that allegedly gave rise to personal jurisdiction over the Defendant himself within that state." *Id.* (*citing Rollins*, 141 Ill. 2d at 279, 565 N.E.2d at 1318).

The specific conduct at issue in this case is York and Frazier's alleged discrimination against Carter, which led to his termination. The fiduciary shield doctrine is meant to protect employees who "ha[ve] little or no alternative besides unemployment when [they] enter[ed] another State to carry out the wishes of [their] employer." *Rollins,* 141 Ill. 2d at 280, 565 N.E.2d at 1318. It is unclear at this time whether York and Frazier were "carrying out the orders of [their] superiors" when they allegedly discriminated against Carter, or whether they exercised their own discretion in doing so. *Renner v. Grand Trunk W. R. R. Co.,* 263 Ill. App. 3d 547, 550, 641 N.E.2d 1, 3 (1992). "To the extent that [defendants were] aware of the illegality of [their] actions . . . but did them anyway, . . . [they may have] moved beyond the scope of [their] professional duties and opened [themselves] up to personal jurisdiction as . . . individual[s]."

13

*Minemyer,* 2007 WL 2461666, at *6.

The facts of record indicate that York and Frazier actively participated in investigating Barrett's complaint concerning Carter. If they discriminated against Carter for serving in the military, and their discrimination resulted in Carter's termination in Illinois, then they "must answer in Illinois for the consequences of th[eir] decision." *Brujis v. Shaw*, 876 F. Supp. 975, 980 (N.D. Ill. 1995). And for reasons the Court has already explained, York and Frazier should have foreseen being haled into court in Illinois in connection with their acts that allegedly resulted in Carter's termination.

On the record as it now exists, the Court concludes that York and Frazier are not entitled to the protection of the fiduciary shield. But given the paucity of the factual record, this is not a final determination on the point. In *Rice*, the Seventh Circuit noted that "if it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing, the district judge can . . . defer resolution to the trial. Presumably he can let the matter ride to trial even if a definitive determination could be made earlier, although normally the better practice is to decide dispositive threshold issues at the outset and spare the parties the burden of a trial." *Rice,* 38 F.3d at 915. The Court, therefore, denies the motion to dismiss as to York and Frazier, subject to renewal following discovery if appropriate.

**B.      USERRA claim against York**

York moves for summary judgment on Carter's USERRA claim against him in his individual capacity. Summary judgment is appropriate if "the pleadings, the discovery

14

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F. 3d 605, 609 (7th Cir. 2008). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

York claims that he is not an "employer" within the meaning of USERRA. He contends that the term employer under the statute refers to individuals with authority to hire and fire employees. Carter contends that the scope of York's authority to hire and fire employees is currently unclear and that more discovery is needed to determine whether he qualifies as an employer under USERRA.

Courts in some jurisdictions have interpreted USERRA as limiting the definition of employer to individuals who have the authority to hire and fire personnel. *See Brandsasse v. City of Sulfolk,* 72 F. Supp. 2d 608 (E.D. Va. 1999) (director of personnel, who had authority over hiring, was subject to liability as employer under USERRA); *Couson v. Town of Kearny*, No. 07-5893, 2010 WL 331347, at *7 (D.N.J. Jan. 19, 2010) ("'courts have recognized that USERRA applies only to . . . those individuals who have the power to hire or fire the employee.'")(*citing Brooks v. Fiore,* No. 00-803, 2001 WL 1218448, at *9 n.3 (D. Del. Oct. 11, 2001)).

15

The language of the statute and accompanying regulations, however, arguably support a broader interpretation of the term "employer." *See Baldwin v. City of Greensboro,* No. 09-742, 2010 WL 3211055, at *3-4 (M.D.N.C. Aug. 12, 2010). USERRA imposes liability on employers who discriminate against and "den[y] initial employment, reemployment, retention in employment, promotion, or any benefit of employment . . . on the basis of" an individual's involvement in the uniformed services. 38 U.S.C. §§ 4311(a), (c). The statute defines an "employer" as "any person . . . that pays salary or wages for work performed or that has control over employment opportunities, including – a person . . . to whom the employer has delegated the performance of employment-related responsibilities." *Id.* § 4303(4)(A)(I). USERRA's accompanying regulations also provide that the term "[e]mployer . . . means any person . . . that pays salary or wages for work performed, or that has control over employment opportunities." 20 C.F.R. § 1002.5(d)(1). The regulations provide an exception for persons who have "been delegated functions that are purely ministerial in nature, such as maintenance of personnel files or the preparation of forms for submission to a government agency." *Id.* § 1002.5(d)(1)(I).

Carter contends that York influenced the company's decision to terminate his employment. York also concedes that as human resources consultant, he "provides advice and makes recommendations to managers regarding discipline and termination pursuant to Siemens' employment policies and procedures." Defs.' Br. at 10; *see also id.* Ex. D. In his February 10, 2006 e-mail, York recommended that Siemens terminate Carter. This evidence reflects that York has "control over employment opportunities"

16

and he has "employment-related responsibilities" that are not "purely ministerial in nature." 20 C.F.R. § 1002.5(d)(1)(I); *see also* 38 U.S.C. § 4303(4)(A)(I). Given these circumstances, York is not entitled to summary judgment.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss for lack of personal jurisdiction as to defendant Olney but denies the motion as to defendants York and Frazier and also denies York's motion for summary judgment [docket no. 8].

                                                      _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: September 2, 2010